IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| IN RE: ] | |
| ] | CHAPTER 11 |
| MULLIS GARAGE & AUTO ] | CASE NO. 15-30116-SDB |
| PARTS, LLC, ] | |
| ] | |
| DEBTOR. ] | |
| _____] | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11U.S.C. §§ 105, 361, 362, 364(b), AND (II) GRANTING RELATED RELIEF**

COMES NOW, MULLIS GARAGE & AUTO PARTS, LCC, the Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case (the "Debtor"), and hereby moves (this "Motion") pursuant to sections 105, 361, 362, 364(b), of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of the proposed order (the "Order") authorizing the Debtor to (i) obtain post-petition financing consisting of a loan provided by the one hundred percent owner DAVID L. MULLIS ("Lender") of Debtor and granting the Lender a administrative claim pursuant to Section 364(b) of the Bankruptcy Code; and (ii) granting related relief, including the modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and Lender to implement the terms of the Order, and shows as follows:

**Bankruptcy Rule 4001 Concise Statement**

1. The granting of the Debtor authority to obtain post-petition financing pursuant to the terms and conditions of the Loan Agreement between Debtor and Lender.

2. Material provisions of the Loan Agreement attached hereto and incorporated by reference, as Exhibit "A", are set out in the following sections[1]:

   **I. Principal Amount**: $80,000.00 with $50,000 to be loaned initially and an additional $30,000.00 to be drawn on as necessary;

   **II. Interest Rate**: 4.000%.

   **III. Maturity Date:** May 1, 2016.

   **IV. Collateral**: None; Lender shall be granted an unsecured administrative claim

   **VIII. Co-Obligors/Co-Makers**: None

   **IX. Guarantors**: None.

   **X. Default Provisions**: (a) Failure to make scheduled payments.

   **XI**. **Payment Terms:** The Note shall be a single pay note. Lender will renew the note annually on for up to five (5) years contingent on Debtor paying the accrued interest in full on the maturity date.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On May 1, 2015, (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is authorized to operate its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] The summaries and descriptions of the terms and conditions of the Loan Agreement set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The Loan Agreement is controlling subject to any order of this Court and should be read in its entirety for a thorough and complete understanding of the proposed post-petition financing.

3. No creditors' committee has been appointed by the United States Trustee in this Chapter 11 case at this time. No trustee or examiner has been appointed in this Chapter 11 case at this time.

4. The Debtor is in the vehicle maintenance and repair, and the sale of salvage parts business and employs approximately 8 persons.

## RELIEF REQUESTED

5. By this Motion, the Debtor requests the authority to enter into a post-petition financing agreement with Lender pursuant to the terms of the Loan Agreement.

## Debtors Proposed Post-Petition Financing Immediate Need for Post-Petition Financing

6. The Debtor lacks sufficient unencumbered funds with which to operate and maintain its business and assets during the pendency of this Chapter 11 case. The Debtor's ability to satisfy critical operating expenses is essential to the Debtor's ability to maintain its asset values. Accordingly, the Debtor has an immediate need for debtor-in-possession financing as set forth more fully herein.

## Background of the Loan Agreement

7. To provide the Debtor with the funding necessary to fulfill its administrative and operational obligations throughout the duration of this Chapter 11 case, the Debtor requires a post-petition lending facility. In exploring its options, the Debtor recognized that the obligations owed to the Pre-petition secured creditors are secured by substantially all of its assets, and therefore, (i) the liens of these prepetition secured creditors would have to be primed to obtain post-petition financing, (ii) the Debtor would have to find a post-petition lender willing to extend credit that would be junior to the liens of the Pre-petition secured creditors, or (iii) post-petition financing would have to be extended on an unsecured basis. Lender is willing to extend post-

petition financing subject to the terms and conditions contained in the Loan Agreement including the gratuity of a super priority lien.

8. Importantly, the Loan Agreement provides that the Debtor may draw funds immediately to meet its administrative and operational obligations during this Chapter 11 case.

9. Consequently, the Debtor determined that Lender proposed post-petition financing is the best financing option available under the circumstances.

10. The Debtor and Lender are intimately related as Lender is the 100% owner of Debtor. Notwithstanding, Debtor has been unable to obtain adequate financing from third parties on the same or more favorable terms as proposed by Lender.

11. Pursuant to the Loan Agreement the Debtor may use the proceeds of the Lender to finance the Chapter 11 case and for other general corporate purposes. Each of the proposed uses of the proceeds of the Loan Agreement confers a direct benefit upon the Debtor and its estate. Among other things, the Loan Agreement allows the Debtor to finance the ordinary costs of its operations, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital and operational needs, including but not limited to the buying of inventory. .

## **The Loan Agreement Should Be Authorized**

12. Approval of the Loan Agreement will provide the Debtor with immediate and ongoing access to borrowing availability to pay the Debtor's current and ongoing operating expenses, and utility and vendor costs. Unless these expenditures are made, the Debtor would be forced to cease operations which would result in irreparable harm to its business and going concern value and would jeopardize the Debtor's ability to reorganize. The Debtor's reorganization depends in large part on maintaining and/or restoring customer and employee confidence and maintaining the operation of its business as it restructures. Accordingly, the

Debtor has an immediate need to access the Loan Agreement proceeds in order to, among other things, permit the orderly operation of its business by timely procuring and paying vendors, providing customer care and paying the employees at its facility, thereby maximizing recoveries for the Debtor's stakeholders. The Debtor believes that such financing will enable it to stabilize operations and ultimately, in conjunction with a reorganization, restore its profitability. Accordingly, the timely approval of the relief requested herein is imperative.

13. Section 364(b) of the Bankruptcy Code provides, among other things, that a debtor is entitled to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

14. The Debtor's liquidity needs can be satisfied only if the Debtor is immediately authorized to obtain the post-petition financing set forth herein. The Debtor has been able to procure sufficient financing as an administrative expense under section 364(b). Therefore, the Debtor proposes to obtain the financing set forth in the Loan Agreement.

15. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. See, Group of Institutional Investors v. Chicago, Mil., St. P., & Pac. R.R. Co, 318 U.S. 523, 550(1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant

a debtor considerable deference in acting in accordance therewith.  See, e.g., Bray v. Shenandoah Fed.Say. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the comt's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."). See also In re Funding Sys. Asset Mgmt. Corp., 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); In re Curlew Valley Assocs, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985).

16. Substantially all of the Debtor's assets are encumbered and, despite the diligent efforts of the Debtor, the Debtor has been unable to procure the required funding from creditors other than Lender, the owner of the Debtor. The Debtor submits that the circumstances of this Chapter 11 case requires the Debtor to obtain financing under sections 364(b) of the Bankruptcy Code, and accordingly, the Loan Agreement reflects the exercise of its sound business judgment.

17. The terms and conditions of the DIP Facility are fair and reasonable, the Loan Agreement should be accorded the benefits of section 364(b) of the Bankruptcy Code.

### The Automatic Stay Should Be Modified on a Limited Basis

18. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to implement the terms of the proposed Order.

19. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### Waiver of Bankruptcy Rules 6004(a) and (h)

20. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### **Cash Collateral**

21. Contemporaneously, the Debtor has filed a motion for the use of cash collateral.

22. The Debtor intends, until further order of this Court, to segregate the Loan Agreement proceeds from the cash collateral proceeds.

WHEREFORE, the Debtor respectfully requests that the Court:

(a) Authorize the Debtor to enter into the Loan Agreement with DAVID L. MULLIS;

(b) Grant DAVID L. MULLIS an administrative claim pursuant to 11 U.S.C. Sec. 364(b);

(c) Grant DAVID L. MULLIS relief from stay to effectuate the terms of the Loan Agreement;

(d) Waive Bankruptcy Rule 6004(a) and (b); and

(e) Grant the Debtor any and all relief deemed just and proper.

THIS 1st day of May, 2015.

                                          **MERRILL & STONE, LLC**

                                          s/Jon A. Levis
                                        JON A. LEVIS
                                        ATTORNEY FOR DEBTOR
                                        GEORGIA BAR NO: 448848

LAW OFFICES:

MERRILL & STONE, LLC
SECOND FLOOR - MITCHELL BUILDING
101 S. MAIN STREET
POST OFFICE BOX 129
SWAINSBORO, GA 30401
(478)237-7029
(478)237-9211 – FAX

EMANUEL COUNTY, GEORGIA

## CERTIFICATE OF SERVICE

I, Roxanne T. Davis, Paralegal, of the firm of Merrill & Stone, Attorneys at Law, Post Office Box 129, Swainsboro, Georgia 30401, do hereby certify that I have served a copy of the within and forgoing **DEBTOR'S MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(C), 363(D), 363(E), 364(C), 364(D)(I), 364(E), AND 507(B), AND (II) GRANTING RELATED RELIEF** upon:

| | |
|---|---|
| Matthew E. Mills, Esq. | Joshua E. Kight, Esq. |
| Office of the U.S. Trustee | Attorney At Law |
| 222 West Oglethorpe Ave., Ste. 302 | Post Office Box 816 |
| Savannah, GA  31401 | Dublin, GA  31040 |
| | |
| Edward B, Claxton, III, Esq. | Mr. Lucas Cowart |
| Edward B. Claxton, III, LLC | Morris State Bank |
| Post Office Box 16459 | Post Office Box 520 |
| Dublin, GA  31040 | Dublin, GA  31040 |

by e-mail and/or mailing a copy through the United States mail with sufficient postage attached thereto to assure delivery.

**THIS** the 1st day of May, 2015.

**MERRILL & STONE, LLC**


By:  s/Roxanne T. Davis
    ROXANNE T. DAVIS
    PARALEGAL


LAW OFFICES:

MERRILL& STONE, LLC
POST OFFICE BOX 129
SWAINSBORO, GA  30401
(478)237-7029
(478)237-9211 - fax